IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                              :
GLENN MCDANIEL,                :
            Petitioner,      :
                              :         CIVIL ACTION
       v.                      :         NO. 21-738
                              :
JAMIE SORBER, et al.,      :
            Respondents.   :
                              :
_____:

## OPINION

**Slomsky, J.**                                                      **July 17, 2023**

## I.     INTRODUCTION

In 2012, following a bench trial held in the Philadelphia Court of Common Pleas, Petitioner Glenn McDaniel was found guilty of first-degree murder and was sentenced to life imprisonment without parole. McDaniel currently is incarcerated at the State Correctional Institution in Montgomery County, Pennsylvania ("SCI Phoenix"). On February 16, 2021, he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (the "§ 2254 Petition") alleging ineffective assistance of counsel and due process claims. He seeks an evidentiary hearing on his claims and a new trial. On March 25, 2021, the Court referred the § 2254 Petition to Magistrate Judge Elizabeth T. Hey for a Report and Recommendation. On August 22, 2022, Magistrate Judge Hey issued her Report and Recommendation (the "R&R"), recommending denial of the § 2254 Petition. On December 16, 2022, McDaniel filed Objections to the R&R. McDaniel's Objections will be overruled, an evidentiary hearing is not warranted, and the R&R will be approved and adopted. Accordingly, McDaniel's § 2254 Petition will be denied and no certificate of appealability will be issued.

1

## II.     BACKGROUND

The relevant facts surrounding the murder for which McDaniel was found guilty were summarized as follows by Judge Jeffrey Meinhart of the Philadelphia Court of Common Pleas, who presided over McDaniel's bench trial:

> The instant matter had its genesis in a dispute involving employees for rival tow truck companies, Siani's Towing and Straight Up Towing, that occurred during the early morning hours of October 26, 2010, over which company would get to park a tow truck at the intersection of Frankford and Lehigh Avenues in Philadelphia.  On the morning of October 26, 2010, defendant and the victim herein, Ray Santiago, employees of the rival tow truck companies, began arguing and then fighting as did several employees of the rival companies.  The victim apparently won his fight with [McDaniel].
>
> Following the fight, [McDaniel] got into his truck and instead of leaving, hit the victim repeatedly with his truck causing fatal blunt trauma injuries to his head, chest, lungs, and lower extremities.  During the incident[,] [McDaniel] several times reversed the direction of his truck and ran the victim over and over again several times.  The entire incident was videotaped by a security camera located at the scene of the incident.

Trial Court Opinion, 1/25/13, at 1-3.

Commonwealth v. McDaniel, 2013 WL 11248495, at *1 (Pa. Sup. Ct. Dec. 4, 2013) (footnote omitted).

### A.     Evidence Produced at Trial

At trial, Assistant District Attorney James Barardinelli gave an opening statement in which he referred to McDaniel and Santiago as "enforcers" for their respective tow truck companies.  Thereafter, the Commonwealth introduced into evidence surveillance video footage showing McDaniel enter his tow truck, drive forward into Santiago, and then reverse into Santiago.  Officer Henry Sienkiewicz, an officer of the Philadelphia Police Department's Accident Investigation Division ("AID"), testified about his investigation of the crime scene,

describing both his sketch of the crime scene and the contents of several photographs of the scene. On cross-examination, McDaniel's counsel asked Officer Sienkiewicz whether he took any measurements of Santiago's tow truck, to which he replied that he "neglected to do it" and that the omission "was an oversight on [his] part."

In addition, Detective James Dunlap testified as an expert witness for the Commonwealth. On direct examination, Detective Dunlap testified that, in other cases in which he testified as an expert in state and federal courts, he has processed and recovered video footage from 477 scenes. Moreover, Detective Dunlap testified that he processes and recovers video footage from surveillance cameras using his "specialized training and equipment." The surveillance video was played during his testimony.

During trial, the Commonwealth also called as a witness Detective Donald Dove.[1] Detective Dove was assigned as the lead investigator on McDaniel's case. He testified that he took McDaniel's statement after he was arrested. McDaniel's told Detective Dove that he: "put

---

[1] As noted infra, McDaniel asserts that the introduction of Detective Dove's testimony violated his due process rights under the Fourteenth Amendment to the United States Constitution because Dove "was arrested for and convicted of misconduct." (Doc. No. 1 at 10.) The R&R states the following regarding Detective Dove's conviction and the role it played in McDaniel's post-conviction hearings:

> In his PCRA [Post-Conviction Relief Act] appeal, McDaniel argued that the PCRA court erred in dismissing the petition without an evidentiary hearing based on "newly-discovered evidence that former Detective Dove tampered with evidence and refused to cooperate with authorities, and such evidence undermines the integrity of the investigation into McDaniel's case." [Commonwealth v. McDaniel,] 2020 WL 433381, at *3 [(Pa. Super. Ct. Jan. 28, 2020)]. The Superior Court determined that McDaniel was not entitled to relief because the after-discovered evidence could only have been used to impeach the detective's testimony and McDaniel failed to explain how the detective's wrongdoing affected the validity of his conviction in light of the overwhelming evidence of his guilt. Id. at 4.

(Doc. No. 27 at 23.)

[the tow truck] in drive, which I thought was reverse, I went forward, and hit him once, and then, when I realized I was on top of him, I reversed it and backed out, and I guess I hit him then, too." In his statement to Detective Dove, McDaniel described Santiago as the rival tow truck company's "enforcer."

Dr. Richard Cohn was called by the Commonwealth to testify as an expert forensic toxicologist. On cross-examination, McDaniel's counsel asked Dr. Cohn whether McDaniel's blood-alcohol level would have impaired any mental or physical functions. Dr. Cohn testified that someone with McDaniel's blood-alcohol level would have slow reflexes and "could be off by a certain distance" when trying to drive.

### B.    McDaniel's § 2254 Petition

On February 16, 2021, McDaniel filed a pro se Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (the "§ 2254 Petition"). (Doc. No. 1.) He raised six grounds he believed demonstrated that he is being detained in violation of the Sixth and Fourteenth Amendments to the United States Constitution:

1.  "Trial Counsel denied Petitioner his Sixth and Fourteenth Amendment rights to a fair trial when he failed to object to prosecutor's elicitation of a conviction that was not crimen falsi" (Ground One);

2.  "Petitioner was denied his rights under the Sixth and Fourteenth Amendments when counsel failed to object to the prosecutor[']s prejudiced [sic] comments thru [sic] out the trial that he was an enforcer" (Ground Two);

3.  "Petitioner was denied his rights under the Sixth and Fourteenth Amendments when trial counsel failed to object to AID [Accident Investigation Division] officer's

testimony where the alleged investigation conducted was incomplete" (Ground Three);

4. "Petitioner was denied his rights to Due Process where the lead detective responsible for key portions of the investigation that lead [sic] to Petitioner's arrest and conviction was arrested for and convicted of misconduct" (Ground Four);

5. "Trial counsel denied Petitioner his rights to a fair trial when he failed to challenge the experience/qualifications of Detective Dunlap regarding security video" (Ground Five);

6. "Trial counsel was ineffective for failing to investigate crime scene and present experts that would have given evidence that supported Petitioner's trial testimony" (Ground Six).

(Id. at 5-13.)  Grounds One to Three, Five, and Six of McDaniel's § 2254 Petition assert ineffective assistance of counsel claims.  (See id. at 7-10, 13.)  McDaniel asserts a due process violation in Ground Four.  (Id. at 10-12.)

### C.   Magistrate Judge's Report and Recommendation

On March 25, 2021, McDaniel's § 2254 Petition was referred to Magistrate Judge Elizabeth T. Hey for a Report and Recommendation.  (Doc. No. 5.)  On August 22, 2022, Magistrate Judge Hey issued a Report and Recommendation (the "R&R") in which she recommended that McDaniel's pro se Petition for Habeas Corpus (Doc. No. 1) be denied.  (Doc. No. 27 at 1.)  As the R&R states, "McDaniel concedes that he failed to present five of his six claims to the state courts" and, thus, those five claims are procedurally defaulted.  (Id. at 12.) The R&R analyzed each of McDaniel's five ineffective assistance of counsel claims.  Rather

than "proceed through the <u>Martinez</u> analysis," the Magistrate Judge "instead address[ed] the underlying [ineffective assistance of counsel] claim[s]." (<u>Id.</u> at 13-14.)

The R&R first found that Ground One asserted in McDaniel's § 2254 Petition was meritless "[b]ecasue the prosecutor's question [to him] regarding the simple assault conviction was in direct response to McDaniel's attempt to portray himself as a calm and peaceful person who would not deliberately hurt anyone . . . ." (<u>Id.</u> at 15.) Accordingly, the R&R stated that "the evidence of the simple assault conviction was admissible" and that "[t]rial counsel cannot be considered ineffective for failing to present a meritless objection or argument." (<u>Id.</u> at 15-16 (citing <u>Real v. Shannon</u>, 600 F.3d 302, 309 (3d Cir. 2010); <u>Commonwealth v. Buterbaugh</u>, 91 A.3d 1247, 1263 (Pa. Super. Ct. 2014)).) Thus, the R&R recommended that McDaniel's first ineffective assistance of counsel claim asserted in Ground One be denied. (<u>Id.</u> at 16.)

Regarding Ground Two, the R&R stated that the prosecutor's references to McDaniel as an "enforcer" did not prejudice him because, "[i]n light of the evidence presented at trial, . . . McDaniel has failed to establish a reasonable probability that, but for the prosecutor's characterization of him as an enforcer, the outcome of the trial would have been different." (<u>Id.</u> at 17.) The R&R recommended that the claim asserted in Ground Two of the § 2254 Petition be denied. (<u>Id.</u>)

As for Ground Three, the R&R stated the following:

> The prosecutor called Officer Henry Sienkiewicz, who testified as an expert in the area of accident investigation, and the officer detailed his investigation of the scene of Mr. Santiago's death. . . . During her cross examination, defense counsel discredited the officer's measurements of the lot, his depiction of the placement of the truck, and his failure to measure the Siani's truck that was in the lot. . . . The officer admitted that his measurements were "[s]lightly off," and that his failure to measure the truck was "an oversight." . . . In addition, Officer Sienkiewicz testified that his diagram included points that were estimated by another officer based on viewing the video. . . .

6

> McDaniel offers no argument as to how the officer's investigation was "inconclusive" or "incomplete," or what more his counsel should have done to undermine the officer's testimony. Because defense counsel did call the accuracy of Officer Sienkiewicz's sketch of the scene into question, McDaniel's claim that defense counsel failed in this regard lacks merit.

(Id. at 18-19.) The R&R thus recommended the denial of Ground Three in McDaniel's § 2254 Petition.

The R&R then addressed Ground Five raised in McDaniel's § 2254 Petition. The R&R stated that Detective Dunlap had specialized experience in "offload[ing] data/security video from security systems to secure the data for presentation in court" and that "[w]hen the prosecutor offered him as an expert in forensic video recovery, defense counsel did not object or ask any questions, and Judge Meinhart granted the request, noting that '[t]he detective has testified before this Court a number of times, and I will accept him as an expert in the field.'" (Id. at 19-20.) The R&R concluded that McDaniel's claim that his trial counsel was ineffective was meritless because he "does not explain on what basis his counsel could have objected to Detective Dunlap's testimony." (Id. at 20.) The R&R recommended the denial of Ground Five.

Addressing the final ineffective assistance of counsel claim in Ground Six that McDaniel's trial counsel was ineffective for (1) "failing to investigate [the] crime scene" and (2) failing to "present experts that would have given evidence that supported Petitioner's trial testimony" (Doc. No. 1 at 13), the R&R stated the following:

> Although the defense did not call any expert witnesses, the Commonwealth's expert forensic toxicologist, Richard Cohn, testified that at the time McDaniel's blood was drawn approximately three-and-one-half hours after the incident, his blood alcohol level was .10 percent, and estimated that his blood alcohol content was .15 at the time of the incident.
> . . .
> On cross-examination, Dr. [Richard] Cohn conceded that, considering a blood alcohol level of .15, McDaniel's reflexes would be slow, and it was possible that his depth perception would be impaired and his ability to drive in a close space with little room to maneuver would be affected."

(Doc. No. 27 at 21.)   In addition, the R&R stated that McDaniel's trial counsel was not ineffective because "McDaniel fails to identify any specific witness or expert that his trial counsel failed to call or what such a witness could establish."[2]   (Id.)   Accordingly, the R&R recommended the denial of Ground Six.

Lastly, the R&R addressed the sole non-ineffective assistance of counsel claim alleged in Ground Four of McDaniel's § 2254 Petition—the due process violation stemming from Detective Ronald Dove's conviction for misconduct in a case unrelated to McDaniel's.   The R&R summarized the extent of Detective Dove's involvement in McDaniel's case:

> Detective Dove was identified as the detective assigned to the investigation.  . . .
> However, this testimony mainly consisted of reading McDaniel's police statement and reviewing the video of the incident.  . . .  McDaniel does not articulate in his petition how the detective's participation in his case rendered his conviction fundamentally unfair.  In his pro se supplement to the PCRA petition, he claimed that "there is a question of Detective Dove's mishandling of the DUI Blood work and the questioning of this defendant."
> . . .
> In his statement, [McDaniel] told Detective Dove that he drove over Mr. Santiago twice, first going forward by accident when he intended to back up, and then after realizing what happened he "backed up off of him."  . . .  During the interview, the detective confronted McDaniel with the video showing his truck running over Mr. Santiago repeatedly, not just twice.  . . .  McDaniel told the detective that he did not "remember hitting him three times, but I'm not saying that I didn't do it.  I just don't remember that part."  . . .  During his own testimony, McDaniel explained that he did not recall everything that happened until he saw the video.  . . .  Nothing in this exchange suggests that Detective Dove acted improperly during his interview of McDaniel.

---

[2]   In support of this proposition, the R&R quoted the following excerpt from <u>Zettlemoyer v. Fulcomer</u>:

> A witness cannot be produced out of a hat.  [Petitioner] cannot meet his burden to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness based on vague and conclusory allegations that some unspecified and speculative testimony might have established his defense.  Rather, he must set forth facts to support his contention.

(Doc. No. 27 at 21 (quoting <u>Zettlemoyer v. Fulcomer</u>, 923 F.3d 284, 298 (3d Cir. 1991)).)

> . . .
>
> . . . [T]here is no evidence that Detective Dove participated in any wrongdoing with respect to drawing McDaniel's blood.
>
> In the absence of any other indication that the detective mishandled the investigation of the case against him, McDaniel has failed to establish that Detective Dove's subsequent wrongdoing in an unrelated case denied him fundamental unfairness.

(Id. at 24-26.)

The Magistrate Judge then construed McDaniel's claim in Ground Four as alleging a violation of Brady v. Maryland, 373 U.S. 83 (1963), in which the United States Supreme Court held that "[t]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. The R&R concluded that because "McDaniel has not established that there is a reasonable probability that Detective Dove's wrongdoing in an unrelated case would affect the outcome of his trial . . .[,] [he] has failed to establish that evidence of Detective Dove's wrongdoing was material for purposes of Brady." (Doc. No. 27 at 27.)

### D.    McDaniel's Objections

On December 16, 2022, McDaniel filed Objections to the R&R. (Doc. No. 34.) Though only one Objection is classified as "Objection #1" and no others are classified as "Objection #2 to #3" for instance, McDaniel makes several arguments objecting to the R&R's findings and conclusions.

First, McDaniel argues that:

> The R&R['s] findings overlook[] the relevant and material facts that:  i) Petitioner worked for both tow truck companies and knew both employees and employers of both tow truck companies on the specific day of the incident, therefore, he was called to calm the matter, by talking to people on both sides, as the trial testimony established; ii) the material facts of the simple assault were not before the Court.

(<u>Id.</u> at 2.)  Relatedly, McDaniel asserts that "[t]he R&R's findings of [his] 'good' character (Doc. 26 at 11-12) is not supported by the trial Court record . . . ."  (<u>Id.</u> at 3.)[3]  McDaniel contends that the introduction at trial of his simple assault conviction "was extremely prejudicial to Petitioner and his case.  . . .  Trial counsel did not object, did not move for a mistrial, and did not preserve the claim for a timely direct appeal."  (<u>Id.</u>)

Second, McDaniel claims that the Magistrate Judge erred in the R&R in addressing the merits of his ineffective assistance of counsel claims because it "ignored the findings and requirements of MARTINEZ . . . and moved to the prongs of STRICKLAND to determine Petitioner's [ineffective assistance of counsel claim]."  (<u>Id.</u>)  Instead, McDaniel argues that he is entitled to "an evidentiary hearing, in accordance with the holdings of MARTINEZ . . . ."  (<u>Id.</u>)

Third, McDaniel places particular emphasis on his blood alcohol level at the time of the murder.  In particular, he claims that 18 Pa. C.S. § 308 "clearly removes the first degree murder finding from the consideration of the State Court or fact finder in this matter . . . [and] the highest degree of murder Petitioner could have been convicted [of] is third degree."  (<u>Id.</u> at 4.)  18 Pa. C.S. § 308 provides:

> Neither voluntary intoxication nor voluntary drugged condition is a defense in a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder.

18 Pa. C.S. § 308.

Lastly, it appears that McDaniel summarizes all of his Objections to the R&R as follows:

> Petitioner alleges that based upon the R&R's findings and the reasons for those findings (not applying MARTINEZ analysis, but considering the merits of each

---

[3]   In the phrase quoted above, McDaniel cites Defendant's Response in Opposition (Doc. No. 26) to his § 2254 Petition, not the R&R (Doc. No. 27).

claim under the prongs of STRICKLAND; and considering Petitioner's Due Process claim without an evidentiary hearing being had on the newly-discovered Lead Detective Richard Dove and other detectives' misconduct BRADY evidence) Petitioner objects to the unfounded findings and reasons given by the R&R to support those findings based upon those findings being premature, until an evidentiary hearing has been had, and the pro se Petitioner has been afforded a full and fair opportunity to develop the record, to substantiate his claims of [ineffective assistance of counsel] and a Due Process violation has occurred, entitling Petitioner to the issuance of a Writ of Habeas Corpus.

(Doc. No. 34 at 6.)

For reasons discussed infra, McDaniel's Objections to the R&R will be overruled and the R&R will be approved and adopted.  No evidentiary hearing is required.  Accordingly, McDaniel's § 2254 Petition will be denied.

## III.    ANALYSIS

McDaniel's Objections to the R&R will be overruled for three reasons.  First, McDaniel's Objection that the R&R ignored the requirements of Martinez is foreclosed by the language of 28 U.S.C. § 2254(b)(2).  Second, his Objection that the R&R overlooked his employment with both tow truck companies and that the trial court did not consider the facts underlying his simple assault conviction will be overruled because his ineffective assistance of counsel claims are meritless.  Third, McDaniel's Objection regarding his blood alcohol level rest on an incorrect interpretation of 18 Pa. C.S. § 308 and reliance on statutes repealed eight years before the murder for which he was convicted.

### A.     Law Regarding Ineffective Assistance of Counsel Claims
####        and the Martinez Framework

Ineffective assistance of counsel claims are governed by the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984) and have two prongs:  (1) deficient performance and (2) prejudice.  See Bey v. Superintendent Greene SCI, 856 F.3d 230, 238 (3d Cir. 2017) (citing Strickland, 466 U.S. at 689-92, 694).  The performance prong is met where "counsel's

representation fell below an objective standard of reasonableness." <u>Workman v. Superintendent Albion SCI</u>, 915 F.3d 928, 938 (3d Cir. 2019) (internal quotation marks omitted) (quoting <u>Strickland</u>, 466 U.S. at 687-88).   The prejudice prong is met where there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   <u>Id.</u> (internal quotation marks omitted) (quoting <u>Strickland</u>, 466 U.S. at 694). "[C]ounsel [is] not ineffective for failing to raise a meritless argument."   <u>Real v. Shannon</u>, 600 F.3d 302, 309 (3d Cir. 2010) (citing <u>Parrish v. Fulcomer</u>, 150 F.3d 326, 328 (3d Cir. 1998)).

Although federal courts generally may not grant habeas corpus petitions unless "the applicant has exhausted the remedies available in the courts of the State," <u>see</u> 28 U.S.C. § 2254(b)(1)(A), "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding . . . counsel in that proceeding was ineffective."   <u>Martinez v. Ryan</u>, 566 U.S. 1, 17 (2012).   In other words, a court can analyze a habeas petitioner's ineffective assistance of counsel claim "only if there is sufficient cause to do so under <u>Martinez</u> . . . ."   <u>Gaines v. Superintendent Benner Twp. SCI</u>, 33 F.4th 705, 710 (3d Cir. 2022) (citing <u>Martinez</u>, 566 U.S. at 14).   As the court in <u>Gaines</u> explained:

> Sufficient cause exists [under <u>Martinez</u>] to review a defaulted claim for ineffective assistance of counsel if the petitioner shows that:  (1) "the default was caused by ineffective assistance of post-conviction counsel"; (2) "in the initial-review collateral proceeding"; and (3) "the underlying claim of trial counsel ineffectiveness is substantial."   <u>Preston v. Superintendent Graterford SCI</u>, 902 F.3d 365, 376 (3d Cir. 2018) (internal quotation marks omitted) (quoting <u>Cox v. Horn</u>, 757 F.3d 113, 119 (3d Cir. 2014)).

<u>Id.</u> at 710.

A claim is "substantial" if it "has some merit."   <u>Martinez</u>, 566 U.S. at 14 (citing <u>Miller-El v. Cockrell</u>, 537 U.S. 322 (2003)).   "A petitioner satisfies this standard by demonstrating that

jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El, 537 U.S. at 327 (citing Slack v. McDaniel, 529 U.S. 473, 481 (2000)).  If any of the three prongs are not met, then there is not sufficient cause for a district court to review the ineffective assistance of counsel claim presented in the habeas corpus petition.

However, if the underlying ineffective assistance of counsel claim fails on the merits, there is no need to consider whether the three Martinez prongs are met.  See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."); see also Roman v. Diguglielmo, 675 F.3d 204, 209 (3d Cir. 2012) ("Because we will deny [petitioner's] claims on the merits, we need not address the issue of exhaustion in this case.").

### B. McDaniel's First Objection That the R&R Ignored Martinez Will Be Overruled

McDaniel's first Objection to the R&R that it ignored Martinez when it proceeded to address the merits of his ineffective assistance of counsel claims will be overruled because 28 U.S.C. § 2254(b)(2) provides that the merits of claims raised in habeas corpus petitions may be addressed notwithstanding a procedural default.  Specifically, § 2254(b)(2) provides as follows:

> An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

28 U.S.C. § 2254(b).  A court faced with a habeas corpus petition presenting a procedurally defaulted claim of ineffective assistance of counsel, therefore, need not proceed to the analysis prescribed in Martinez if the underlying claim is meritless.  The R&R correctly stated that:

> The <u>Martinez</u> analysis requires the court to determine whether PCRA counsel was ineffective using the familiar <u>Strickland</u> analysis, but evaluate prejudice by determining whether the underlying claim of ineffectiveness of trial counsel is "substantial" under the standard for granting a certificate of appealability. <u>Martinez</u>, 566 U.S. at 14 (citing <u>Miller-El v. Cockerell</u>, 537 U.S. 322 (2003)) . . . . If the court finds that PCRA counsel was ineffective utilizing this analysis, then the court proceeds to address the merits of the underlying ineffective assistance of counsel claim, utilizing the full <u>Strickland</u> analysis. Thus, Petitioner will only be entitled to relief on the claim if PCRA counsel <u>and</u> trial counsel were ineffective. However, the court may forgo the <u>Martinez</u> analysis if the underlying claim of ineffective assistance of trial counsel has no merit. <u>See</u> 28 U.S.C. § 2254(b)(2) (writ may be denied "notwithstanding the failure of the applicant to exhaust" state court remedies).

(Doc. No. 27 at 13.) Under this standard, the Magistrate Judge correctly recommended the denial of all five of McDaniel's ineffective assistance of counsel claims because trial counsel was not unconstitutionally ineffective under <u>Strickland</u>.[4] (<u>Id.</u> at 15-21.) Thus, there was no need to do a <u>Martinez</u> analysis. McDaniel's Objection that the Magistrate Judge ignored <u>Martinez</u> therefore will be overruled.

### C. McDaniel's Second Objection Regarding the Admissibility of His Simple Assault Conviction and the R&R's Oversight of His Employment by Both Tow Truck Companies Will Be Overruled

McDaniel's second Objection to the R&R relates to the Magistrate Judge's recommendation that his claim that his trial counsel was ineffective for failing to object to the prosecution's introduction into evidence the fact of his prior simple assault conviction be denied. This Objection will be overruled, however, because his ineffective assistance of counsel claim is without merit.

Although McDaniel argues that the "facts of the simple assault were not before the Court," Pennsylvania law does not require that the facts supporting an underlying conviction be introduced to rebut evidence of a defendant's character trait. Pennsylvania Rule of Evidence 404

---

[4] McDaniel's five ineffective assistance of counsel claims asserted in his § 2254 Petition are quoted in Section II.B., <u>supra</u>.

provides that "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Pa. R. Evid. 404(a). However, "a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it." Id. 404(a)(2)(A).

In Commonwealth v. Buterbaugh, the Pennsylvania Superior Court explained when a defendant who has introduced evidence of his peaceful or law-abiding character may be subject to cross-examination by prior convictions:

> Throughout the trial, Appellant presented evidence, through his own testimony and the testimony of others, that he has a good reputation in the community and that he was a peaceful, law-abiding persons. Accordingly, this opened the door and allowed the Commonwealth to rebut Appellant's claims. . . . [T]he Commonwealth should have . . . impeached Appellant with the prior convictions during cross-examination. See 42 Pa. C.S. § 5918(1).

91 A.3d at 1263. Additionally, the trial court need not be aware of the facts underlying the simple assault conviction offered by a prosecutor who introduces such evidence after the defendant opens the door by introducing evidence of good or peaceful character. See generally Pa. R. Evid. 609 (referring to "evidence of a criminal conviction").

Here, in response to McDaniel's testimony that he is a peaceful, calm person who was called in to resolve the tension between the employees of the rival tow truck companies, the prosecution introduced evidence of McDaniel's prior simple assault conviction to rebut McDaniel's evidence of peacefulness. Thus, McDaniel opened the door to being impeached on cross-examination with evidence of his prior conviction. Accordingly, the objection to the prosecution's introduction of McDaniel's prior conviction to rebut his introduction of evidence of good character is without merit. Because McDaniel's trial counsel was not ineffective for not raising a meritless argument, see Real, 600 F.3d at 309, McDaniel's Objection will be overruled.

###### D.  McDaniel's Third Objection Regarding His Blood Alcohol Level Will Be Overruled

In McDaniel's third Objection, he argues that the highest offense with which he can be convicted is third degree-murder.  Specifically, McDaniel cites 18 Pa. C.S. § 308 and other Pennsylvania statutes establishing presumptions regarding blood alcohol levels.  However, McDaniel's Objection will be overruled because his argument rests on a misinterpretation of current Pennsylvania law and relies on provisions of Pennsylvania law that were repealed in 2004.[5]

McDaniel cites 18 Pa. C.S. § 308, which is current law and provides:

Neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense, except that evidence of such intoxication or drugged condition of the defendant may be offered by the defendant whenever it is relevant to reduce murder from a higher degree to a lower degree of murder.

18 Pa. C.S. § 308.  McDaniel asserts that:

18 Pa. C.S. § 308 clearly removes the first degree murder finding from the consideration of the State Court or fact finder in this matter; however, that possibility was not removed in this specific case and in circumstances when the prosecutor placed Petitioner's intoxication into question at the time of the offense, while arguing that the required "specific intent to kill" for a first degree murder was present in this case.

(Doc. No. 34 at 4.)

However, a plain reading of § 308 shows that defendant bears the burden of introducing at trial evidence of his or her intoxication only when relevant to reduce a higher degree of murder to a lower degree.  Section 308 does not prevent the prosecution from introducing at trial evidence of a defendant's intoxication, nor does the prosecution's introduction of such evidence preclude a first-degree murder conviction.  Instead, the defendant bears the burden of presenting

---

[5]   The repealed statutes are 75 Pa. C.S. §§ 1547(d) and 3731.

evidence that he or she "was unable to form the specific intent [to murder] because he or she was so overwhelmed or overpowered by drugs to the point of having lost his faculties at the time of the crime." Commonwealth v. Miller, 897 A.2d 1281, 1285 (Pa. Super. Ct. 2006) (citing Commonwealth v. Fletcher, 861 A.2d 898 (2004)).

In Miller, the defendant, who was convicted after a jury trial in state court of first-degree murder, argued that "her drugged condition on the day of the murder negated her ability to form the requisite specific intent." Id. at 1284.  The Superior Court disagreed and held that "evidence of intoxication places no additional burden on the Commonwealth." Id.  Because the court found that the Commonwealth presented substantial evidence demonstrating the defendant's specific intent to kill, it held that:

> The jury, sitting as trier of fact, listened to [expert] testimony, as well as other testimony offered, exercised its discretion, and found the doctor's statement testimony [sic] referencing appellant's self-serving testimony unpersuasive and not sufficient to reduce the charge from first degree murder.  Appellant has not presented us with any evidence to convince us to disturb the jury's credibility determination.

Id. at 1286.

Here, McDaniel argues that the Commonwealth's introduction of evidence of his intoxication at the time of the murder alone is sufficient to exclude first- and second-degree murder from the ambit of potential criminal offenses.  But he offers in support of his argument 75 Pa. C.S. §§ 1547(d) and 3731, both of which were repealed in 2004 before he murdered the rival tow truck company employee in 2012.[6]  Because both statutes were repealed eight years

---

[6] On February 1, 2004, §§ 1547(d) and 3731 were repealed by Sections 10 and 14 of Act 2003-24, P.L. 120 ("Section 1547(d) of Title 75 is repealed. . . . Section 3731 of Title 75 is repealed.").  Before it was repealed, § 1547(d) provided, in pertinent part:

> (d) PRESUMPTIONS FROM AMOUNT OF ALCOHOL.  IF CHEMICAL TESTING OF A PERSON'S BREATH, BLOOD OR URINE SHOWS:

before he committed the murder for which he ultimately was convicted, McDaniel's reliance on them is misplaced. They do not apply to the § 2254 Petition or the Objections to the R&R.

Aside from the repealed statutes he cites, McDaniel offers no evidence that his faculties were so overwhelmed or overpowered by alcohol that he was unable to form the specific intent to kill. To the contrary, the Commonwealth presented at trial evidence that after McDaniel ran over his victim, he put the tow truck in reverse to drive over the victim again. For all these reasons, McDaniel's Objection to the R&R regarding his blood alcohol level or intoxication will be overruled.

## IV. CONCLUSION

For the foregoing reasons, McDaniel's Objections to the R&R (Doc. No. 34) will be overruled. The Court will approve and adopt the R&R (Doc. No. 27). Therefore, McDaniel's § 2254 Petition (Doc. No. 1) will be denied. There is no need for an evidentiary hearing. An appropriate Order follows.

---

. . .

(2) That the amount of alcohol by weight in the blood of an adult is in excess of 0.05% but less than 0.10%, this fact shall not give rise to any presumption that the adult was or was not under the influence of alcohol, but this fact may be considered with other competent evidence in determining whether the adult was or was not under the influence of alcohol.

75 Pa. C.S. § 1547(d)(2).

Before it was repealed, § 3731 prohibited driving under the influence of alcohol and discussed methods of obtaining blood alcohol concentration levels.

18